# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In re:

SHAPAT, INC., PATWARI, LLC,
SHAPAT 2 LLC and SHAPAT 3, LLC,

And RE: Jesal Patwari

Debtors.

Honorable Novalyn L. Winfield, U.S.B.J.
Chapter 7

Case No. 08-26178: 26181; 26184; 26188
(NLW)

CATHERINE YOUNGMAN, in her
capacity as Chapter 7 Trustee for the Estate
of Shapat, Inc., Shapat 2, LLC., Shapat 3,
LLC and Patwari, LLC

And

Eric Perkins, Chapter 7 Trustee for the estate
of Jesal Patwari

Plaintiffs,

vs.

SUSHEELA VERMA,

Defendant

Adv. Pro. Nos. 10-02106; 10-2107; 10-2108;
10-2109 and 2104 (NLW)



## DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS

Susheela Verma, Esq.
**LAW OFFICES OF SUSHEELA VERMA**
One Woodbridge Center, Suite 810
Woodbridge, N.J. 07095
732-596-1140, Fax: 732-596-1150

## UNDISPUTED FACTS

1.   At all times relevant hereto, the defendant, Susheela Verma, Esq., ("Verma") is and was an attorney licensed to practice law in the State of New Jersey.

2.   At all times relevant hereto, the debtor, Jesal Patwari is and was domiciled and resided in the State of New Jersey.

3.   At all times relevant hereto, the debtors, Shapat, Inc., Shapat 2, LLC, Shapat 3, LLC and Patwari, LLC are and were business entities organized under the laws of the State of New Jersey.

4.   At all times relevant hereto the debtor, Jesal Patwari, entered into a four (4) franchise agreements with Doctors' Associates, Inc., ("Subway") to operate 4 Subway sandwich shops by way of the debtor business entities.

5.   During their franchise relationships various disputes arose between Jesal Patwari and Subway.

6.   At one point in time, the debtors retained the Law Office of Susheela Verma to represent them.

7.   The debtors and Verma executed a standard written fee retainer agreement. Debtors agreed to pay the initial sum of $275.00 per hour plus costs.

8.   The fee agreement was an arms lengths transaction.  It required the debtors to pay a reasonable fee for services rendered plus costs.

9.   Prior to retention of Susheela Verma by the debtors, Subway had demanded arbitration of its dispute with the debtors.

10.   On or about September 6, 2007, arbitration was held between Subway and debtors in Connecticut.

2

11. The debtors did not attend.

12. The arbitrator granted four (4) awards to Subway terminating the franchise agreements for all four (4) stores and ordering the debtors to cease and desist immediately from using any Subway trade names, trademarks, service marks and other items identifying the stores as Subway shops. The arbitrator awarded Subway an underreported fee due in the amount of $25,265.08 for store number 27800 and $17,280.97 for store 29895. The arbitrator awarded Subway all withheld royalties for all four (4) stores, the cost of collecting all withheld moneys, arbitration costs and interest on those accounts.

13. Subsequently, on or about October 15, 2007 (previously in error went to Middlesex County), the debtors filed a lawsuit on behalf of the debtors, Jesal Desai, Shapat, Inc., Shapat II, LLC, Shapat III, LLC and Patwari, LLC in the Superior Court of New Jersey, Essex County, Chancery Division, Docket No: ESX-C-314-07 against Doctors Associates, Inc. and Subway Real Estate Corporation. Debtors filed an Order to Show Cause for injunctive relief to enjoin the enforcement of Doctor's Associates, Inc.'s arbitration provisions of the franchise agreements and the arbitrations awards. The court, Judge Kenneth Levy, J.S.C., presiding, on or about February 1, 2008, found that the arbitration clause of the franchise agreement was unconscionable and unenforceable **(Exhibit A, Verma Cert)** and granted the debtors by Order of the Court dated February 26, 2008 **(Exhibit B, Verma Cert)** a preliminary injunction.

14. Pursuant to an Order of Court dated February 26, 2008, Hon. Kenneth Levy, J.S.C. presiding, the court Ordered:

> "Ordered, that Defendants, Doctors Associates, Inc., and Subway Real Estate Corporation are preliminarily enjoined from enforcing the four (4) Arbitration

Awards entered September 26, 2007 in the proceeding before the American Dispute Resolution Center between the parties to preserve the status quo and from using the said Arbitration Awards as evidence in any pending proceeding between these parties until further order of this Court, except that pursuant to <u>R</u>. 4:52-6 this Order does not enjoin any other proceedings currently pending before the Superior Court except to the extent that that Order prohibits use of the Arbitration Award in such proceedings."

**<u>See Exhibit A.</u>**

15.  From the date of the Order on February 26, 2008 for some 7 months until August 2008, the debtors failed to pay Subway its royalties, advertising costs and other charges in the approximate amount of $243,469.91.  However the debtors continued to operate their Subway shops and use the Subway trademark for free.  See **<u>Exhibit D,</u>**

**<u>Verma Cert.</u>**

16.  On or about June 21, 2008, Judge Martini heard Subway's Order to Show Cause Application for injunction against the debtors for failure to pay the royalties. See **<u>Exhibit "C",</u>** the transcript of the hearing before Honorable William J. Martini, U.S.D.J, United States District Court, District of New Jersey, Doctor's Associates, Inc. v. Desai, Civ. No. 08-3363 (WJM).

17.  The relationship between Ms. Verma and the debtors is as follows:

    a.  She is not related to or associated in any way with the debtors.

    b.  The debtor did not retain control of the properly.

    c.  The obligation was disclosed.  It was not concealed.

    d.  The debtors did not transfer or pay any money to Ms. Verma because they were being sued by Doctor's Associates.

    e.  The debtors did not abscond.

    f.  The debtors did not remove or conceal assets.

4

g. The debtors agreed to pay for legal services at a sum which is a reasonable charge for like legal services in the area.

**See Verma Cert**

18.  Ms. Verma and the debtors entered into a typical agreement for legal services in the North Jersey area for what is commonly charged by most attorneys handling a like matter in that area.

## LEGAL ARGUMENT

## POINT ONE

## THE TRUSTEE STANDS IN THE SHOES OF THE DEBTOR OR CREDITOR

It is a black letter rule of law that the Bankruptcy Code permits:

1.  The bankruptcy trustee stands in the shoes of the debtor; and,

2.  The bankruptcy trustee stands in the shoes of an unsecured creditor to avoid the transfer of an asset if an unsecured creditor had an allowable claim under state or federal law.

When a trustee prosecutes a right of action derived from the debtor, the trustee stands in the shoes of the debtor.  See 5 Lawrence P. King, *Collier on Bankruptcy 541.08* (15th ed. 1996).  The trustee is subject to all defenses available against the debtor, and must prove all elements that the debtor herself would be required to prove.  Stumph v. Albracht, 982 F.2d 275, 277 (8th Cir. 1992); In re Giorgio, 862 F.2d 933, 936 (1st Cir. 1988). See also Wiley v. Public Investors Life Ins. Co., 498 F.2d 101, 104 (5th Cir. 1974) and In the Matter of Educators Group Health Trust, 25 F.3d 1281 (5th. Cir. 1994).

When a trustee prosecutes a right of action of an unsecured creditor under § 544 (b) of the Bankruptcy Code, the bankruptcy trustee may avoid an unsecured creditor's

allowable claim it might have had under state or federal law. Here the applicable state law is the New Jersey Uniform Fraudulent Transfer Act ("UFTA"), N.J.S.A. § 25:2-20 et seq. The trustee may avoid a claim under 544 (b) only if "there is an unsecured creditor of the debtor that actually has the requisite nonbankruptcy cause of action." In re G-I Holdings, 313 B.R. 612, 632-34 (Bank.N.J. 2004) citing Panama Williams, Inc. v. Parr (*In re Pananma Williams, Inc.*), 211 B.R. 868, 871-72 (Bankr.S.D.Tex.1997) (noting that under § 544(b) the trustee must locate an existing unsecured creditor of the debtor who, on the date of bankruptcy, is able to avoid a transfer of property)."

It is the trustee who bears the burden of proving the existence of a qualified unsecured creditor.

It is important to remember that the rights of the trustee to avoid a transfer are "completely derivative of those of an actual unsecured creditor." In re G-I Holdings, 313 B.R. at 633.

The counts of the plaintiff's complaint dependent on and derived from debtors or creditor's rights are as follows:

1.   Count III, IV, "Avoidance of Fraudulent Transfers"; N.J.S.A. § 25:2-25; N.J.S.A. § 25:2-27;

2.   Count VII, "For Failure to Deliver Files and Comply with Court Order";

3.   Count IX, "Malpractice";

4.   Unnumbered Count, "Reservation of Rights."

## POINT TWO

### THE STANDARD FOR A RULE 12(b) 6 MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012, governs motions to dismiss for failure to state a claim. A complaint "does not need detailed factual allegations" to survive a 12(b)(6) motion. Federal Rule of Civil Procedure 8 "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombley, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957). "Courts are required to accept all well-pleaded allegations in the complaint as true and to draw reasonable inferences in favor of the non-moving party." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting In re Rockefeller Ctr. Props. Secs. Litig., 311 F.3d 198, 215-16 (3d Cir. 2002).

However, a plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombley, U.S. at 555; Phillips, 515 F.3d at 231.

> "A motion presented under Rule 12(b) 6 "serves to test the sufficiency of the factual allegations in the plaintiff's complaint." *In re DVI, Inc.,* et al, 2008 Bankr.Lexis 2338 at *5; 2008 WL 4239120 at *1-2, 50 Bankr.Ct. Dec. 159 (Bankr. D.Del.2008) (citing *Kost v. Kozakienwicz,* 1 F.3d 176, 183 (3d Cir.1993); *Morris v. Azzi,* 866 F.Supp. 149, 152 (D.N.J.1994) (a Rule 12(b) 6 motion challenges the legal sufficiency of a claim in order to determine whether it should proceed. It is also designed "to eliminate actions that are fatally flawed in their legal premise and destined to fail, and thus spare the litigants the burdens of unnecessary pretrial and trial activity." (Citations Omitted)." In Re Norvergence, Inc., 424 B.R. 663 (Bkrtcy. D.N.J. 2010).

In Re Norvergence, Inc., 424 B.R. at 686, the court quoted the U.S. Supreme Court Case of Twombly, supra, and said as follows:

> "There must be" plausible grounds to infer actionable conduct, i.e. enough "to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Apace Communications, Ltd. v. Burde,* et al., 522 F.Supp.2d 509 (W.D.N.Y.2007).

(citing *Twombly*, 127 S.Ct. at 1974; *Wilkerson v. New Media Technology Charter*, 522 F.3d 315, 321). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." (Citation omitted).

The Third Circuit has interpreted Twombly as requiring that:

"[t]he allegations of the complaint should "plausibly suggest' the pleader is entitled to relief." *Wilkerson*, 522 F.3d 315, 321 (citing *Twombly*, 127 S.Ct. at 1966). "After *Twombly*, it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of [the proscribed] conduct." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008)."

In Ashcroft v. Javaid Iqbal, the U.S. Supreme Court characterized the Rule 12(b)

(6) "plausibility" standard as follows:

"[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."" *Ashcroft v. Javaid Iqbal*, _____ U.S. _____, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly* at 570, 127 S.Ct. 1955, 167 L.Ed 929). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing *Twombly* at 556, 127 S.Ct. 1955). The Ashcroft Court also commented that "[t]he plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. (citing *Twombly*). "Determining whether a complaint states a plausible claim or relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. (internal citations omitted). In Re Norvergence, Inc., 424 B.R. at 687.

## (A.)

## UNDER A RULE 12(b) (6) MOTION THE COURT MAY CONSIDER UNDISPUTED AUTHENTIC DOCUMENTS INTEGRAL TO THE PLEADINGS AND MATTERS OF PUBLIC RECORD

On a motion to dismiss, a court may consider the complaint, exhibits attached

thereto, matters of public record, and undisputed authentic documents if the plaintiff's

claims are based upon those documents or integral to claim of the nonmovant. See

Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.

1993), cert. denied, 510 U.S. 1042 (1994) (citations omitted). See also Syncsort, Inc. v.

Sequential Software, Inc., 50 F. Supp.2d 318, 325-26 (D.N.J. 1999) (Noting that a

standard for review for judgment on the pleadings is the same as that for a motion under

Fed. R.Civ.P. 12(b) (6) for failure to state a claim.)

Judicial notice includes ". . . notice of 'proceedings in other courts, both within

and outside the federal judicial system, if the proceedings have direct relation to the

matters at issue." This is true even though the proceedings were not made part of the

record before the district court." Black & Decker, Inc. v. Robert Bosch Tool Corp., 500

F. Supp.2d 864, 867-68 (N.D.Ill. 2007). The reason why the court may consider extrinsic

documents is to prevent:

> "[t]he situation in which a [claimant] is able to maintain a claim . . . by extracting
> an isolated statement from a document and placing it in the complaint, even
> though if the statement were examined in the full context of the document, it
> would be clear that the statement was not [actionable]. Id.

In our case Verma seeks to have this court take judicial notice of the following

matters:

1.    Pursuant to an Order of Court dated February 26, 2008, Hon. Kenneth Levy,

J.S.C. presiding, it Ordered:

> "Ordered, that Defendants, Doctors Associates, Inc., and Subway Real Estate
> Corporation are preliminarily enjoined from enforcing the four (4) Arbitration
> Awards entered September 26, 2007 in the proceeding before the American
> Dispute Resolution Center between the parties to preserve the status quo and from
> using the said Arbitration Awards as evidence in any pending proceeding between
> these parties until further order of this Court, except that pursuant to R. 4:52-6 this
> Order does not enjoin any other proceedings currently pending before the
> Superior Court except to the extent that that Order prohibits use of the Arbitration
> Award in such proceedings."

**Exhibit "A", Verma Cert**

2.    From the date of the Order on February 26, 2008 for some 7 months until

August 2008, the debtors failed to pay Subway royalties advertising and other charges,

pocketing said sum while continuing to operate debtors' Subway Shops and use the
Subway trademark for free.

The debtors operated for a long time after the issuance of an injunction by Judge
Levy. Subway proceeded for an injunction in federal court for violation of its trade mark.
Judge Martini issued an injunction due to the debtors' failure to pay or offer to pay the
royalties. Judge Martini reasoned as follows:

"If the franchisee fails to pay royalties, and even if they claim there's some
dispute as to the amount of royalties owed, according to that case, that's not a basis on
which a court should withhold an injunction.

**Exhibit "C", page 9, lines 14-18**

"Principally I'm familiar with , and I'm sure all the counsels are, with the decision
in Jiffy Lube International case which is 1 1992 Third Circuit case in which the court
there held that a dispute over termination of a franchise agreement did not preclude the
grant of preliminary injunctive relief. And this case is almost on all points with that case.

**Exhibit "C", page 19, lines 15 to 21.**

The District Court was willing to change its position on the injunction it issued

provided that the debtors made a good faith offer to make the payment. Judge Martini

indicated that he shall reconsider his position if the debtors came back with an offer to

make payment. He gave time to the debtors for this purpose and invited a reapplication if

the debtors committed to make a payment. The following are some excerpts from his

decision:

".. You know what, I'm going to ---- this order will take effect 14 days from now.
If you want to revisit it, you can make an application for me to reconsider it."

**Exhibit "C", page 25 line 25 and page 26 lines 1-2**

"But it will be based on your client or you coming forth and showing something
more than talk about your client wants to pay…"

**Exhibit "C", page 26 lines 4-7.**

He continued:

" **I'm giving you 14 days to reapply if you have good reasons to reapply. And good reason in my mind would be a good faith showing by your client that that they have an intention and a willingness to pay a substantial part of these royalties, and then if there is something that's in dispute, that might open my mind to a different resolution. Okay?**

### Exhibit C, page 26, lines 19-24

"One way would be, make some substantial payments towards it and then I may withdraw this order and then let the matter go into full fledged litigation. Or, I mean I'm not going to tell you what would change my mind. But if you sit down and talk with Mr. Turkish, or if you want to have a settlement conference with me, I will do that as well."

### Exhibit "C", page 29, lines 16-21

### See Exhibit C, Verma Cert.

As is evident from Judge Martini's comments and reasoning, in our case the reason for the court to consider certain extrinsic evidence is very clear. The plaintiff has taken a fact out of complete context and made a conclusion that said choice is negligence.

Finally, "Legal conclusions made in the guise of factual allegations, however, are given no presumption of truthfulness." Syncsort Inc., 50 F. Supp.2d 318 at 325. The pleadings reveal the trustee plead the following legal conclusions in the guise of factual allegations that the court is required to ignore:

**1.** "Count IX, Malpractice," paragraphs:

"75. Defendant breached that duty to Debtors."

"76. Debtors were injured and Defendant's conduct was a substantial

contributing factor to the injury."

**2.** "Count III, Avoidance of Fraudulent Transfers, and 11 U.S.C. § 544, N.J.S.A. 25:2-25," paragraphs:

"45. *Upon information and belief,* the Fraudulent Transfers were made by the Debtor with the actual intent to hinder, delay and defraud creditors and other entities to which the Debtor was or became indebted on or after the date of such Fraudulent Transfers."

"46.   The Debtor received less than reasonably equivalent value in exchange for its Fraudulent Transfers at a time when the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business transaction."

"47. As a result of the Fraudulent Transfer, Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts beyond the Debtor's ability to pay as they became due."

**3.**  Count IV, "Avoidance of Fraudulent Transfers," paragraphs:

"49. Within two years of the Petition Date, the Fraudulent Transfers (as defined above) were made from Debtors to the Defendant for legal fees."

"50. Upon information and belief, as a result of the Fraudulent Transfers, the Debtor became insolvent or was insolvent at the time of the Fraudulent Transfers."

**(B).**

**COUNT NINE OF THE PLAINTIFF'S COMPLAINT FOR
MALPRACTICE, SHOULD BE DISMISSED FOR FAILURE TO STATE A
CLAIM**

The substantive law of the State of New Jersey applies to the plaintiff's cause of

action for malpractice. <u>Dixon Ticonderoga Co. v. Estate of William F. O'Connor</u>, 248

F.3d 151 (3rd Cir. 2001);

    <u>N.J.S.A.</u> § 2A:13-4 provides that "if an attorney should neglect or mismanage any

cause in which he is employed, he shall be liable for damages." A legal malpractice

action derives from the tort of negligence. <u>Greenwald v. Bronkesh</u>, 131 N.J. 486 (1993).

The elements of a legal malpractice action are as follows:

> ". . . (1) the existence of a duty of care upon the attorney; (2) the breach of that
> duty; and (3) proximate causation." <u>Conklin v. Hannoch Weisman</u>, 145 N.J. 395,
> 416 (1996) (internal citations omitted). Proximate cause has been defined "as
> being and any cause which in the natural and continuous sequence produces the
> result complained of and without which the result would not have occurred."
> <u>Fernandez v. Baruch</u>, 96 N.J. Super. 125, 140 (App. Div. 1967), rev'd on other
> grounds, 52 N.J. 127 (1986) (internal citations omitted). "A mere possibility of
> such causation is not enough; and when the matter remains one of pure
> speculation or conjecture, or the probabilities are at best evenly balanced, it
> becomes the duty of the court to direct a verdict for the defendant." <u>Reynolds v.
> Gonzalez</u>, 172 N.J. 266, 284 (2002) (quoting W. Page Keeton, et. al., Prosser &
> Keeton on the Law of Torts, §41, at 259 (5th ed. 1984). <u>Contel Global Marketing,
> Inc. v. Dreifuss</u>, A-3542-08T3 (N.J. Super. 2/4/2010),

(i).

**THE ELEMENT OF BREACH OF DUTY**

    The duty element is not at issue in this case. An attorney owes a client a fiduciary

duty to perform in accordance with the standards of the profession. <u>Conklin v. Hannoch

Weisman</u>, 145 N.J. 395, 416 (1996); <u>Saffer v. Willoughby</u>, 143 N.J. 256, 272 (1996). An

attorney may be liable for a choice in selecting one or more courses of action if that

choice does not have support as a proper practice by the legal profession. See New

Jersey Model Jury Charges, 5.51, Legal Malpractice; quoted in part as follows:

> "Where, according to standard legal practice, the work involves matters to be
> subjected to the judgment of an attorney, an attorney must be allowed the exercise

13

of that judgment and he/she cannot be held liable if, in the exercise of that judgment, he/she has, nevertheless, made a mistake or an error in judgment. Where judgment must be exercised, the law does not require of the attorney infallible judgment. An attorney cannot be held liable for malpractice so long as he/she employs such judgment as is allowed by standards of accepted legal practice. If, in fact, in the exercise of his/her judgment, an attorney selects one of two or more courses of action, each of which in the circumstances has substantial support as proper practice by the legal profession, she/he cannot be found guilty of malpractice if the course chosen produces a poor result."

The plaintiff claims that the defendant committed an act of negligence because it did not file a law suit prior to the arbitration. A party who objects to arbitration proceeding has 3 choices:

1. It can institute an action for a judicial decision on that issue and request that the arbitration be stayed.

2. It may object to the propriety of the arbitration on the ground of no coverage and participate in the arbitration under protest.

3. It may not attend the arbitration proceeding, but it may find itself subject to the arbitration award if it does not prevail in court.

See, Laborers' Local Union Nos. 472 and 172 v. Interstate Curb & Sidewalk, 90 N.J. 456, 465 (1982).

An arbitration proceeding was held on September 6, 2007, at the office of the arbitrator in Connecticut. The debtors did not attend. The arbitrator granted 4 awards to Subway terminating the franchise agreements for all 4 stores and ordering the debtors to cease and desist immediately from using any Subway trade names, trademarks, service marks and other items identifying the stores as Subway shops. The arbitrator awarded Subway an underreported fee due in the amount of $25,265.08 for store number 27800 and $17,280.97 for store 29895. The arbitrator also awarded Subway all withheld

royalties for all four stores, the cost of collecting all withheld moneys, arbitration costs and interest on those amounts.

Subsequently, on October 15, 2007, the defendant filed a lawsuit on behalf of the debtors, Jesal Desai, Shapat, Inc., Shapat II, LLC, Shapat III, LLC and Patwari, LLC in the Superior Court of New Jersey, Essex County, Chancery Division, Docket No: ESX-C-314-07 against, Doctors Associates, Inc. and Subway Real Estate Corporation. Debtors filed an Order to Show Cause for injunctive relief to enjoin the enforcement of Doctor's Associates, Inc.'s arbitration provisions of the franchisee agreement and the arbitrations awards. The court, Judge Kenneth Levy, J.S.C., presiding, on February 1, 2008, found that the arbitration clause of the franchise agreement is unconscionable and unenforceable **(Exhibit A)** and granted the debtors by Order of the Court dated February 26, 2008 **(Exhibit B)** a preliminary injunction.

The choice the debtors made, without more, to file a complaint against Subway after the arbitration proceeding took place, is not a fact in and of its self that is sufficient to substantiate a pleading of the cause of action of negligence. This statement is true for the following reasons:

1. First the courts must decide the issue of whether the arbitration clause of the Subway franchise agreement is unconscionable and unenforceable due to unconsciionability. Primer Paint Corporation v. Flood and Conklin Manufacturing Company, 388 U.S. 395, 403-4 (1967); Muhammad v. County of Rehoboth Beach; Beach, 189 N.J. 1, (2006); See also, Union v. N.J. Transit Bus Operations, 200 N.J. 105 (2009); In re Norvergence, Inc., 424 B.R. 663 (Bank.N.J. 2010).

2. Second, if the arbitration clause of the franchise agreement is unenforceable due to unconscioinability, it is void for public policy reasons.  Therefore it does not matter one iota if the debtors filed their lawsuit before, during or after the arbitration proceeding, since the arbitration clause is void as a matter of law.  See Muhammad, 189 N.J. 105;   Howard v. Diolosa, 241 N.J. Super. 222 (App.Div.1990); Delta Funding v. Harris, 185 N.J. 255 (2005); supra, In re Norvergence, Inc.

From the date of Judge Levy's Order of February 26, 2008 for some 7 months until August 2008, the debtors failed to pay Subway its contractual royalties, advertising and other charges of over $243,000, while at the same time continuing to operate debtors' Subway Shops and the Subway trademark for free. **See Exhibit D.**   On June 9, 2008, Subway filed a verified compliant against the debtors, Jesal Desai, et. Als., United States District Court, District of New Jersey, Civ.No. 08-3363 (WJM).

It removed the State Court action to federal court on August 4, 2008.

By the time the motion was decided in October of 2008, the debtors owed Subway approximately $243,000 plus in royalties, advertising fees and other required franchise fees.

The debtors' attorney achieved the optimal result.  It was the debtors own actions in failing to pay its royalties, advertising and related franchise fees that resulted in Judge Martini's preliminary injunction ordering the debtors to cease using the Subway trademark.

Or said in another way ". . . if the harm would have occurred regardless of the action or omission complained of, the action or omission cannot be a substantial factor in

bringing about the harm." Dawson v. Bunker Hill Plaza Assocs., 289 N.J. Super. 309, 326 (App. Div. 1996).

Or said in another way if as the debtors alleged that the defendant's performance in the timing of the filing of the lawsuit was substandard they have to allege they would have won materially more, in the case within the case" but for the alleged substandard performance. See Frazier v. New Jersey Mfrs. Ins. Co., 142 N.J. 590 (1995); Albee Assoc. v. Orloff, Lowenbach, Stifelman and Siegal, P.A., 317 N.J. Super. 211, 222-23 (App.Div.), cetif. denied, 161 N.J. 147 (1999); Gautam v. DeLuca, 215 N.J. Super. 388, 396-98 (App.Div.), certif. denied, 109 N.J. 39 (1987); Lerner v. Laufer, 359 N.J. Super. 201 (App.Div.2003).

As a matter of law in the instant case the trustee avers that the timing of the filing of the lawsuit is a breach of a duty of care owed to the debtors by Verma. The trustee has averred one isolated fact that, when placed in context, does not support the debtors' claim of malpractice whatsoever.

### (ii)

### PROXIMATE CAUSATION & DAMAGES

In Contel the plaintiff filed a malpractice action alleging, as in our case, that the attorney made a negligent choice. In Contel the plaintiff alleged that the failure to "timely seek default caused plaintiff to incur $2 million in legal fees for the remainder of the Contera litigation." Id. at 6. In our case the plaintiff alleged in Count 9 of its complaint, paragraph 73, that the defendant breached her duty to the debtors when the defendant ". . . failed to commence that lawsuit before the arbitration proceeding," said conduct, paragraph being a "substantial contributing factor to the injury."

Like in <u>Contel</u> the plaintiff has failed to allege the requisite foundation for proximate causation and its compliant should be dismissed. "Nothing in the pleading's factual content permits even an inference of a causal connection between defendants alleged malpractice and any damages suffered by the debtors. As the court in <u>Contel</u> said:

> "In other words, plaintiff has failed to plead facts establishing how defendant's alleged untimely service of process and failure to seek default caused it to incur $2 million in added legal costs." <u>Id</u>. at 13.

In our case as in the <u>Contera</u> case, the plaintiff's case is at best speculative. As set forth in current New Jersey Civil Charge, 5.51B, a lawyer's alleged bad act must be a substantial factor in bringing about the harm to the plaintiff. It says:

> "In sum, in order to find proximate cause, you must find that negligence of the defendant in providing inadequate or incomplete legal advice was a substantial factor in bringing about the harm that occurred and that some harm to the plaintiff was foreseeable from the defendant's negligence."

As a matter of law in this case that finding is impossible at best and speculative at most.

It is legally and factually impossible for choice of timing by the defendant's attorney to be the basis of a malpractice action. That is because the debtors prevailed, the action was stayed and she remained in business. It is not because of the timing of the filing of the law suit, but because the debtors failed to pay their royalties fees that the debtors Subway franchise was eventually terminated and the business closed.

Or said in another way ". . . if the harm would have occurred regardless of the action or omission complained of, the action or omission cannot be a substantial factor in bringing about the harm." <u>Dawson v. Bunker</u> <u>Hill Plaza Assocs.</u>, 289 N.J. Super. 309, 326 (App. Div. 1996).

Based upon the revised 12(b) standards of <u>Twombly</u> and <u>Ashcroft</u>, count nine of

the plaintiff's complaint for legal malpractice is "fatally flawed" and should be dismissed

with prejudice for the following reasons:

1. It does not show that the plaintiff is entitled to relief.

2. It does not give the defendant fair notice of what the claim is and the grounds
upon which it rests.

3. It can't reasonably be conceived that the plaintiffs could, at a trial, establish a
case which would entitle them to relief.

4. It does not plead enough facts to raise a reasonable expectation that discovery
will reveal evidence of an element of the claim.

5. The right to relief is speculative.

7. The facts do not suggest proscribed conduct that is plausible on its face to state
a claim for relief.

## **POINT THREE**

### **THE STANDARD FOR A RULE 9(b) MOTION TO DISMISS**

<u>In re Norvergence, Inc.</u>, 424 B.R. at 667, the court discussed the requirements to

dismiss a complaint that does not comply with Rule 9(b). It said as follows:

"Another way to obtain a Rule 12(b) 6 dismissal involves a plaintiff's failure to meet
the heightened pleading requirements of Fed.R.Civ.P. 9 (b), made applicable to
bankruptcy proceedings pursuant to Fed.Bank.R.P. 7009. According to Rule 9(b), a party
alleging fraud "must state with particularity the circumstances constituting fraud . . .
Malice, intent, knowledge, and other conditions of a person's mind may be alleged
generally. Fed.R.Civ.P. 9(b). The purpose of the heightened pleading requirement of
Rule 9(b) "is to provide notice, not to test the factual allegations of the claim."
<u>Morganroth & Norganroth v. Norris, McLaughlin & Marcus, P.C.</u>, 331 F.3d 406, 414 n. 2
(3d Cir.2003) (citing <u>Gutman v. Howard Savings Bank</u>, 748 F.Supp. 254, 257 (D.N.J.
1990)). Rule 9(b)'s demand for specificity exists to enable defendants to prepare a
defense to the allegations. See <u>Rolo v. City Investing Co. Liquidating Trust</u>, 155 F.3d
644, 659 (3d Cir.1998). It "requires plaintiffs to plead with particularity the
circumstances of the alleged fraud to place defendants on notice of the precise
misconduct with which they are charged." <u>In re Inacom Corp.</u>, et al., 2001 Bankr.Lexis
§<u>Southmost Machin.</u>, 742 F.2d 786, 791 (3d Cir.1984).

In Counts III and IV of the plaintiff's complaint, the trustee alleges that the defendant violated the Uniform Fraudulent Transfer Act (UFTA), <u>N.J.S.A.</u> § 25:2-20 et seq.

The facts that are the basis of the trustee's UFTA claim are undisputed. They are as follows:

1.    The defendant Susheela Verma, Esq., is an attorney licensed to practice law into him State of New Jersey.

2. The debtors hired her to represent them.

3. The parties signed an attorney retained agreement and the debtors agreed to pay Susheela Verma, Esq. for her services at the rate of initial rate of $250.00 per hour plus costs.

4. The relationship between Ms. Verma and the debtors is as follows:

    a.   She is not related to or associated in any way with the debtors.

    b. The debtor did not retain control of the properly.

    c. The obligation was disclosed.  It was not concealed.

    d. The debtors did not transfer or pay any money to Ms. Verma because they were being sued by Doctor's Associates.

    e. The debtors did not abscond.

    f. The debtors did not remove or conceal assets.

    g. The debtors agreed to pay for legal services at a rate which is a reasonable charge for like legal services in the area.

5. The Law Office of Susheela filed a complaint and Order to Show Cause. As a result of that action the court issued an Order issuing an injunction and preliminarily holding the arbitration clause to be unconscionable.

6. As a result of said Order the debtors operated 4 Subway Shops for over 8 months. They paid numerous creditors.  Subway refused to accept their royalty, advertising and other fees as required by the franchise agreement.  They did not pay the required fees over approximately 300,000.00 or deposit them in a separate account. As a result thereof their franchise was terminated.

7. During a period of two years prior to the Petition filing date of August 27, 2008, the defendant represented the debtors and corporate debtors in a dispute with the franchisor Doctors Associates, Inc. (DAI) and related entitles.

8. Defendant was paid some but not all legal fees.

9. The debtors did not attend the arbitration proceeding.

10. The debtors did not file suit prior to the arbitration proceeding.

11. The debtors paid some money to Verma prior to 90 days before their bankruptcy petitions were filed.

12. Ms. Verma and the debtors entered into a typical agreement for legal services in the North Jersey Area for a charge per hour that is typical for the area for the type of legal services rendered.

**(i)**

## THE ACT OF AN ATTORNEY IN REPRESENTING A CLIENT AND BEING COMPENSATED FOR HIS SERVICES IS NOT A VIOLAITON OF THE UFTA

"The purpose of the UFTA, <u>N.J.S.A.</u> § 25:2-20 to -34, is to prevent a debtor from placing his or her property beyond a creditor's reach."   <u>Gilchinsky v. National</u>

Westminster Bank N.J., 159 N.J. 463, 475 (1999) (citing In re Wintz Companies, 23, O

B.R. 848 (8th Cir. BAP 1999)).  It is a vehicle designed by which creditors ". . . may

recover from debtors and others who hinder their collection efforts.  Banco Popular North

America v. Gandi, 184 N.J. 161, 177 (2005).   In Banco Popular the court noted that the

word fraud means something.  Id.   In Banco Popular the New Jersey Supreme Court held

that a cause of action for creditor fraud does not exist in this State against an attorney.  No

cause of action exists in the State of New Jersey against an attorney whose only fault is to

zealously represent his or her client.

In other words absent some other wrongful act, as in Banco Popular, like

conspiracy to violate the UFTA, misrepresentation or the like there is no cause of action

against an attorney who simply represents his client according the Rules of Professional

Conduct.  Such a rule of liability would place undefined duties on attorneys that are

directly opposite current law and hinder an attorney's ability to fulfill their professional

and ethical obligations.  The New Jersey Disciplinary system provides amble protection

against an attorney's dishonest acts.  If the trustee prevailed and this court held that

merely representing a finically distressed client violated the UFTA, every attorney in this

State would refuse to represent any debtor in financial distress.  In the current economic

situation if news reports are correct as many as half of the U.S.'s small businesses are

struggling to survive are on a day to day basis.  In the trustee's world an attorney could

be hauled into court, charged with fraud, forced to work for free and be compelled to pay

for a debtors' losses simply because the attorney represented a financially distressed

debtor.

Therefore:

1. An individual debtor will be unable to retain an attorney and have to appear in
court pro se.

2. In the case of a business entity, under <u>R.</u> 1:21-1(c) it "shall neither appear nor
file a paper in any court of this state except through an attorney authorized to
practice in this state."    Therefore, not only will a business entity be denied
effective assistance of counsel but it will not even be able to represent itself in
court and be denied access to the courts.

(ii).

## AN ARMS LENGTH RETAINER AGREEMENT BETWEEN AN ATTORNEY AND CLIENT IS AS A MATTER OF LAW A REASONABLY EQUIVALENT VAULE IN EXCHANGE FOR LEGAL SERVICES

The UFTA is violated when a **debtor** acts in certain ways to place his property
beyond the reach of a creditor.

<u>N.J.S.A.</u> § 25:2-25 defines fraudulent transfers.  It states:

"A transfer made or obligation incurred by a debtor fraudulent as to a creditor,
whether the creditor's claim arose before or after the transfer was made or the obligation
was incurred, if the debtor made the transfer or incurred the obligation:

a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or

b. Without receiving a reasonably equivalent value in exchange for the transfer or
obligation, and the debtor:

    (1)  Was engaged or was about to engage in a business or a transaction for
which the remaining assets of the debtor were unreasonably small in relation to
the business or transaction; or
    (2). Intended to incur, or believed or reasonably should have believed that the
debtor would incur, debts beyond the debtor's ability to pay as they became due."

Any creditor who is entitled to protection under the UFTA may with or without

judgment, prosecute a suit (1) to avoid the transfer to the extent necessary to satisfy the

claim, (2) to attach or otherwise provisionally secure the asset transferred, (3) to enjoin further deposition of the asset transferred or other property, or (4) to appoint a receiver.

In this case the trustee avers a haphazard attempt to plead a cause of action under sub section "a". "In determining whether the circumstances of a particular transaction give rise to the conclusion that the transferor intended to thwart or evade creditors, courts generally look to factors commonly referred to as "badges of fraud." Firmani v. Firmani, 332 N.J. Super. 118, 121-24 (App.Div.2000). "Badges of fraud" represent circumstances so frequently accompany fraudulent transfers that their presence gives rise to an inference of intent." Id.

In this case the trustee has not alleged nor factually supported one (1) "badge of fraud" as set forth in the UFTA.   In paragraphs 45, 46, 47, 49 & 50 of the complaint it parrots the wording of the UFTA but does not support its claims with any facts other than that the defendant performed legal services for the debtors.   The debtors' act of paying the defendant for legal services without more is not a violation of the UFTA.

The trustee then attempts to bootstrap its pleadings by parroting the language of sub section "b".  While actual intent to defraud is not part of a sub section "b" claim, see Boardwalk Regency Corp. v. Burd, 262 N.J. Super. 162, 164 (App.Div.1993), the trustee must allege facts that: (1) the creditors claim arose before the transfers were made; (2) the transfers were made without the debtor receiving reasonably equivalent value; and (3) the debtor was insolvent as a result of the transfers.

First.  The Trustee has not listed any creditor, the date or amount of its claim nor the date and amount of any transfer made by the debtors to any other creditors to substantiate the trustee's claim that any creditor has a right under the UFTA to make a

claim for relief. The trustee's powers to use the bankruptcy provisions to assert state-law-fraud based fraudulent conveyance are a mere conduit to assert the claim. Section 544 (b) of the Bankruptcy Code gives the bankruptcy trustee whatever avoiding powers an unsecured creditor with an allowable claim might have under applicable state or federal law. Here, the applicable state law is the New Jersey Uniform Fraudulent Transfer Act. The trustee has not shown the existence of an unsecured creditor who could have avoided a transfer under the Act at the time the bankruptcy petitions were filed. Supra, In re G-I Holdings.

Therefore it has not plead any facts to support its claim that an unsecured creditor had a cause of action under the UFTA at the time the debtors filed their bankruptcy petitions.

**Second**. The language set forth in N.J.S.A. § 25:2-26 lists "reasonably equivalent value" as a factor to determine fraudulent intent. "In determining whether the circumstances of a particular transaction give rise to the conclusion that the transferor intended to thwart or evade creditors, courts generally look to factors commonly referred to as "badges of fraud." Firmani, 332 N.J. Super. at 121-24. "Badges of fraud" represent circumstances so frequently accompanying fraudulent transfers that their presence gives rise to an inference of intent." Id. Or in another words even if § b does require a debtor's fraudulent intent to find a debtor made a fraudulent transfer, it seeks to correct a "Badge of Fraud" that the legislature has singled out for particular scrutiny in § b.

Applying principles of statutory construction it is obvious that section does not apply to every act but only an act that is "Badge of Fraud."

In fact in every case arising under § b, the court in all of the cases has found that the section applied but only when there is an underlying wrongful act that gives rise to a conclusion that a debtor sought to thwart or evade creditors. For example, see, Boardwalk Regency Corporation v. Burd, 262 N.J. Super. 162, 164 (App.Div.1993) (Def. suffered gambling loss of $1 million dollars, then amended an existing contract of sale to name his wife as the sole purchaser); Advanced Telcom. Network, Inc. v. Allen (In re Advanced Telcom, Network, Inc.), 2009 Bankr. LEXIS 2028 (Bank.M.D.Fla, July 10 2009), vacated in part by 2010 Bankr. LEXIS 84 (Bankr. M.D. Fla. Jan. 15, 2010) (Corporation hoarded money to pay its former owners instead of paying other debts as they came due).

While it appears that no New Jersey Court state court has interpreted the language "reasonably equivalent value," the State of New Jersey has enacted provisions of the UFT A also in effect in forty-three other jurisdictions. Banco Popular, 184 N.J. at 175. Other jurisdictions have interpreted identically worded statutes to mean that a "reasonably equivalent value" is within the range of values for which the transferor would have sold the assets in an arm's length transaction. Corpus v. Castillo, 294 S.W.3d 631, 636 (App.Tx. 2009). And see VFB LLC v. Campbell Soup Co., 484 F.3d 624, 48 Bankr. Ct. Dec. (LRP) 3 (3d Cir. Del. 2007) (Holding that "reasonably equivalent value" is the market value); and Steele & Associates v. Villante, 659 F. Supp. 157 (D.N.J. 1987) (Transfer of asset to son, no proof of underlying debt).

In the instant case the trustee has not plead any facts whatsoever that support any fact or an inference of a fact that the rendering of legal services was other than in the ordinary course of business and in an arms' length transaction.

(iii).

## THE CAUSE OF ACTION FOR MALPRACTICE DOES NOT TURN THE PAYMENT OF LEGAL FEES INTO A VIOLATION OF THE UFTA

In the state of New Jersey a debtor may plead a cause of action for attorney

malpractice. <u>Conklin v. Hannock Weisman</u>, 145 N.J. 395 (1996). If found negligent an

attorney may be liable for damages including attorneys fees paid to him by his client. In

<u>Saffer v. Willoughby</u>, 143 N.J. 256 (1996), the New Jersey Supreme Court held:

"Ordinarily, an attorney may not collect fees for services negligently performed. In
addition, a negligent attorney is responsible for the reasonable legal expenses and
attorney fees incurred by a former client in prosecuting the legal malpractice action.
Those are consequential damages that are proximately related to the malpractice. In the
typical case, unless the negligent attorney's fee is determined to be part of the damages
recoverable by a plaintiff, the plaintiff would incur the legal fees and expenses associated
with prosecuting the suit." Id. at

In <u>Saffer</u> the defendant attorney committed malpractice but it did not affect the

judgment obtained by the attorney alleged to have committed malpractice. The high

court said that the plaintiff is entitled to reasonable expenses and attorney fees, as

consequential damages, incurred in a successful malpractice prosecution but, if the

consequential damages that are proximately related to the malpractice claim and the

balance of the uncollectible judgment against the attorney are collected the attorney

would be entitled to his fee. Id.

The act of entering into a typical retainer agreement for a reasonable fee to

represent a financially distressed person happens every second of the day and is not a

fraudulent act. Many times the person who most needs the services of an attorney and

the person or entity that can be most helped is the person or entity in financial difficulty.

Many times the lawyer actions are the life raft to steady the ship and put the client back

on a sound financial footing. In this case the attorney threw the debtors a life raft and

they did not sink but swam for 9 months, paid their bills, employed workers, and engaged in commerce. It is unfortunate they eventually sank but it was only due to their own inability to pay their franchise, advertising fees and like fees. Absent any other factors, if the debtors paid their franchise fees after the state court injunction, they would still be operating their business today. The debtors were given time by Judge Martini to make the payment of the royalties and franchise fees. He held his decision in abeyance and issued an injunction hen debtors did not pay.

Therefore the plaintiff's complaint is insufficient as a matter of law to satisfy the heightened pleading standards of Rule 9 of the Federal Rules of Civil Procedure.

### POINT FOUR

### ALLEGATIONS BASED UPON "INFORMATION AND BELIEF" ARE SO SPECULATIVE AND SO UNDEVELOPED TO DENY THE DEFENDANT FAIR NOTICE OF THE CLAIM AND THE GROUDS ON WHICH THE CLAIM RESTS

The plaintiff plead the following allegations in its adversary complaint for relief:

1. Count III, Violation of 11 U.S.C. § 544, N.J.S.A. § 25:2-25, in paragraph #45; the plaintiff avers, "Upon information and belief."

2. Count IV, Avoidance of Fraudulent Transfers, 11 U.S.C. § 544, N.J.S.A. § 25:2-27 count # 50, the plaintiff avers, "Upon information and belief."

3. Count VI, Recovery of Property Under 11 U.S.C. § 550 avers in paragraph 56, that the "Plaintiff repeats and reasserts all the allegations of the Complaint as if set forth herein at length."

4. Count VII, "Disallowance of Claim – 11 U.S.C. § 502(d) avers in paragraph 60 that the "Plaintiff repeats and reasserts all of the allegations of the Compliant as if set forth herein at length."

By its allegations based upon information and belief the plaintiff admits that it is unaware of any facts to support any of the claims for relief it seeks. The remainders of its allegations in each of the above mentioned counts are no more than labels and conclusions, a mere formulaic recitation of the elements of a cause of action. It is obvious that the plaintiff has no facts to support its claims and is on a fishing expedition to use the discovery process to formulate its legal theory against the defendant.

In the State of New Jersey discovery is intended to lead to facts supporting or opposing an asserted legal theory, it is not designed to lead to formulation of a legal theory. Engery Rec. v. Dept. of Env. Prot., 320 N.J. Super. 59, 64 (App. Div. 1999), aff'd o.b. 170 N.J. 246 (2001). Discovery is meant to advance "the public policies of expeditious handling of cases, avoiding stale evidence, and providing uniformity, predictability and security in the conduct of litigation." Zaccardi v. Becker, 88 N.J. 245, 252 (1982).

In the federal courts in the Third Circuit case of supra, Phillips, 515 F.3d at 234 (quoting Twombley, 550 U.S. at 556), the 3rd circuit said:

"The Supreme Court's Twombly formulation of the pleadings standard can be summed up thus: "stating … a claim requires a compliant with enough factual matter (taken as true) to suggest the required element. Id. This "does not impose a probability requirement at the pleading stage, "but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the "necessary element. Id."

In a state law or a federal law case the rule is the same a plaintiff cannot invent a claim and use discovery as a fishing expedition.

As discussed the cases of Twombley, Phillips and Iqbal, supra, set the standard of review to be used by the court to determine a R. 12(b) (6) motion. A compaint based

upon information and belief is a non-sector or no brainer.  It violates the fundamental

rules of pleading established by the cases of <u>Twombley</u>, <u>Phillips</u> and <u>Iqbal</u> as follows:

1.  It fails to give fair notice of what the claim is and the ground for relief.

<u>Twombly</u>, 127 S.Ct. at 1964.  See also <u>Phillips</u>, 515 F.3d at 224.

2. It is based totally upon labels and conclusions and a formulaic recitation of the

elements of a cause of action.  <u>Twombley</u>, 550 U.S. at 555; <u>Phillips</u>, 515 F.3d at

231.

3.  It does not support any showing of any set of facts consistent with the

allegations of the complaint.  <u>Twombley</u>, 550 U.S. at 563.

4.  The facts pled do not raise the right to relief above the speculative level.

<u>Twombley</u>, 127 S.Ct. at 1964-65; and,

5.  The facts are so speculative and the complaint so undeveloped that it does not

provide the defendant with adequate notice.  <u>Phillips</u>, 515 F.3d at 232, citing

<u>Airboren Beepers & Video, Inc. v. AT & T Mobility L.L.C.</u>, 499 F.3d 663, 667

(7th Cir. 2007) stating in part ("We caution that without some factual allegation in

the complaint, a claimant cannot satisfy the requirement that he or she provide not

only "fair notice," but also the "grounds" on which the claim rests.   See

<u>Twombly</u>, 127 S.Ct. at 1965 n. 3.

Not only does the plaintiff's complaint in counts III, IV and VI fail to state a

claim under R. 12(b)(6), but it also fails to state a claim based upon the heightened test

previously stated under R. 6(b).

A complaint plead upon information and belief does not state and does not give rise to any cause of action.  It is one level below the speculative level and must be dismissed under the law set forth in <u>Twombley, Phillips</u> and <u>Iqbal</u>.

## CONCLUSION

For all the reasons set forth herein, it is respectfully requested that the court dismisses Trustee's claims under Counter II, III, IV, VI, IX and pleading under title Reservation of Rights.

Dated:  November 9, 2010

Susheela Verma, Esq.

31