**McELROY, DEUTSCH, MULVANEY,**
**& CARPENTER, LLP**
Michael S. Waters, Esq.
Jeffrey Bernstein, Esq.
Nicole Leonard, Esq.
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone:  (973) 622-7711
Facsimile:   (973) 622-5314
E-Mail: mwaters@mdmc-law.com
E-Mail: jbernstein@mdmc-law.com
E-Mail: nleonard@mdmc-law.com
*Attorneys for Eric R. Perkins, Esq. Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>JESAL PATWARI,<br><br>                     Debtor.<br><br>ERIC R. PERKINS, in his capacity as Chapter 7 Trustee for the Estate of Jesal Patwari,<br><br>                     Plaintiff,<br>      v.<br><br>SUSHEELA VERMA,<br><br>                     Defendant. | Case No. 08-26178 (NLW)<br><br>Chapter 7<br><br>Honorable Novalyn L. Winfield, U.S.B.J.<br><br><br>Adv. Proceeding No. 10-02104 (NLW) |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS**

                                                      **Michael S. Waters, Esq.**
                                                      **MCELROY, DEUTSCH, MULVANEY &**
                                                       **CARPENTER, LLP**
                                                       Three Gateway Center
                                                       100 Mulberry Street
                                                       Newark, New Jersey 07102
                                                       *Attorneys for R. Perkins, Esq. Chapter 7*
                                                       *Trustee*

1538076

**STATEMENT OF FACTS**

Defendant Susheela Verma (herein "Defendant" or "Verma") filed a motion under R. 12(b)(6) to dismiss Counts II, III, and IV, (the Fraudulent Transfer Claims), VI, (for recovery of property under §550), IX (for malpractice) and the "Reservation of Rights" in the Amended Complaints filed by Eric R. Perkins, Chapter 7 Trustee for the Estate of Jesal Patwari and Catherine Youngman, Chapter 7 Trustee for the Estate of Shapat, Inc., Patwari, LLC, Shapat 2 LLC, and Shapat 3, LLC (hereinafter collectively referred to as "Plaintiffs" or "Trustees").  Defendant's motion does not seek to dismiss the other counts of the complaint seeking: the avoidance of preferential transfers, (Count I) the avoidance of post-petition transfers, (Court V) the disallowance of any claims, (Count VII) damages for failure to deliver files and to comply with court orders, (Count VIII) and for an accounting and repayment of funds determined to be owed in the accounting (Count X).

Defendant had an attorney/client relationship with Jesal Patwari, (hereinafter "Patwari") Shapat, Inc., Patwari LLC, Shapat 2, LLC and Shapat 3, LLC (hereinafter collectively the "Debtors") for a number of years ending in April 2009.  During that period of time it is estimated that Verma was paid approximately $175,000.00 by Debtors.  The Debtors owned and operated four Subway Stores pursuant to franchise agreements with Doctors Associates Incorporated ("DAI").  A major portion of Verma's representation of the debtors concerned the dispute with the franchisor, DAI.  Those disputes began with audits in April 2006, and continued through arbitration proceedings which resulted in default arbitration awards in September 2007 and continued thereafter, resulting in the closing of the Debtors' Subway stores.  During that period, the Debtors were experiencing financial difficulties.  In the course of representing the Debtors in the

arbitration proceedings, Verma requested adjournments of the arbitration. Delays in taking action resulted from, *inter alia,* Verma being away in the summer of 2007 and because of her demands to receive payment before proceeding as counsel. At that time, the royalties in dispute in the arbitration proceeding were less than $100,000.

In the end, Verma advised the Debtors not to attend the arbitration and Verma did not attend the arbitration on behalf of the Debtors. A default arbitration award was entered in September 2007. DAI stopped withdrawing automatic royalties and advertising funds from the Debtors' account and refused to accept payments from Debtors. Verma was advised of this and counseled no action by the Debtors prior to her going to Court and obtaining a ruling. On October 15, 2007, more than a month after the arbitration award was entered, Verma presented an application for an order to show cause as a result of which the Honorable Kenneth Levy, J.S.C. later issued a decision and order in February 2008. In that order he was unable to prevent the actions already taken by DAI against Debtors for non-payment of royalties. In substance, all he was able to do was to prevent the use of the arbitration award in evidence. DAI was still unwilling to accept funds from Debtors. During the period from the injunction in February 2008 through September 2008, the debtors paid Ms. Verma approximately $100,000.00 in legal fees, thus further depleting the debtors of money to pursue any arrangement to resolve the matter. Payments to Verma included large amounts that were paid in June, July, August and September of 2008, prior to and after the filing of bankruptcy. In addition, Verma hired Patwari's husband to work in her office and subsequently filed suit against him.

1538076                            2

Verma never took any action to resolve the matter with DAI by any subsequent application to Judge Levy as she had advised the Debtors. Verma's action and failure to act gave DAI the opportunity to continue using the failure to pay royalties, which it would not accept, as the basis for a subsequent injunction against Debtors' use of its Trademark, which it obtained in a proceeding before the Honorable William Judge Martini, U.S.D.C.J. to close down Debtors' stores. At the end of the day, DAI was able to file a proof of claim for nearly $2,000,000.00, arising out of the arbitration award after penalties for continued use of the trademark and trebling.

## LEGAL ARGUMENT

### POINT I

**DEFENDANT'S AFFIDAVIT AND STATEMENT OF UNDISPUTED FACTS SHOULD BE EXCLUDED IN CONSIDERING THIS MOTION UNDER RULE 12(B)(6)**

Defendant's motion is accompanied by an Affidavit of Susheela Verma (the "Verma Affidavit") which has attached a February 1, 2008 transcript of proceedings before the Honorable Kenneth Levy, J.S.C., the preliminary injunction entered by Judge Levy on February 26, 2008, transcript of motion proceeding before the Honorable William Martini U.S.D.C.J. on July 21, 2008, a certification of Trisha Lee, an employee of Doctors Associates, Inc. ("DAI") dated June 30, 2008, the first page of an answer of Patwari LLC, the first page of a response by Patwari LLC to a request for production of documents in a matter in Superior Court of New Jersey, Law Division, Hudson County, an application for retention filed by Feitlin, Youngman, Karas and Youngman, LLC in the matter of Patwari LLC, a certification of Catherine E. Youngman, Esq. in support of that application and an order authorizing retention of Feitlin, Youngman, Karas and

1538076                                    3

Youngman, LLC in response to that application, and finally, and a certificate of service for that application. In addition, the certification of Verma contains 17 paragraphs of factual assertions, some of which are directed to the allegations of the complaint and some of which are argumentative.

As a result Ms. Verma has presented to this Court matters outside the pleadings in conjunction with her motion.[1] Her affidavit and exhibits go well beyond the kind of Court rulings as to which judicial notice may be taken in appropriate cases. Pursuant to F.R.C.P. 12(d), if these matters are not excluded by the Court, the motion must be treated as one for summary judgment under R. 56 and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

We raise this at the outset and respectfully request that the Court exclude all matters outside the pleadings that have been presented by the Defendant. We respectfully submit that this is clearly not a case or a time for summary judgment. The Trustees have had no discovery, have not had the deposition of the Defendant, have not had the accounting requested in their Complaint and, notwithstanding the Trustee's application for and the issuance of a court order, the Defendant has failed to date to produce requested materials including detailed billing information and e-mail and other communications with respect to the arbitration proceeding which is at the heart of this dispute. Further, this is a dispute for malpractice that will likely involve expert witnesses. It appears from the Verma Affidavit that it will also involve disputed fact issues. Neither the plaintiffs nor the Court should be put to the burden of dealing with this as a summary judgment motion at this stage. The scheduling order would normally

---

[1] Defendant has also included an alleged Statement of Undisputed Facts which is appropriate for a Summary Judgment Motion under Rule 56. To the extent she alleges the facts outside the pleadings, many raise fact issues that are not for resolution on a motion under R. 12(b)(6).

defer such a motion until after the completion of all discovery. We ask that the Verma Affidavit, and all references to the contents and attachments of the Verma Affidavit in the brief, be excluded from the motion.

## POINT II

### LEGAL STANDARD APPLICABLE TO RULING ON MOTIONS TO DISMISS UNDER RULE 12(b)(6)

The law regarding standards of pleading to be examined in a motion under R. 12(b)(6) have evolved in recent years beginning with the Supreme Court's Opinion in Bell Atl. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007) in which the standard has shifted away from simple notice pleading. That standard and its application in this Circuit was well summarized in the Opinion in the United States Court of Appeals for the Third Circuit in Fowler v. UMPC Shadeyside, 578 F.3d 203 (3d Cir. 2009). There, the Third Circuit vacated the District Court order dismissing the complaint before any responsive pleading was filed or discovery took place. The court referred to its own opinion in Phillips v. Cnty. of Allegheny, 515 F.3d 232, (3d Cir. 2008):

> "In Phillips, we discussed the appropriate standard for evaluating Rule 12(b)(6) or 12(b)(1) motions in light of the anti-trust context presented in Twombly, holding that the acceptable statement of the standard remains: 'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"
>
> Fowler, 578 F.3d at 210 (quoting Phillips, 515 F.3d at 233).

The Court noted that there remained limits on the obligation placed on a plaintiff:

> "Even post-Twombly, it has been noted that a plaintiff is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that 'raise a

1538076

5

> reasonable expectation that discovery will reveal evidence of the necessary element.'"
> Id. at 212 (citing Graff v. Subbiah Cardiology Assoc., Ltd. No. 08-207, 2008 WL 2312671 (W.D. Pa. June 4, 2008) citing Phillips, 515 F.3d at 234).

As will be discussed hereinafter it is respectfully submitted that the allegations of Plaintiffs' complaint meet that standard.

## POINT III

### DEFENDANT'S MOTION TO DIMISS THE MALPRACTICE CLAIM ASSERTED IN COUNT IX OF THE COMPLAINT SHOULD BE DENIED

The Defendant claims that the Trustees' malpractice claim should be dismissed under R. 12(b)(6) because (1) as Verma obtained an order preventing the arbitration from being introduced into evidence, she obtained the "optimum result" (DB at 16) and therefore, this Court could not find that there is a plausible claim that could be proven at trial; (2) Defendant claims that she will prevail on the defense that plaintiff will not be able to show proximate cause between the Defendant's negligent conduct and any damages suffered by the Debtors (Defendant's Brief, herein "DB" at 17); and (3) there will be no showing of the existence of a creditor with a claim at the time of Defendant's negligent conduct (DB at 6).

None of these arguments affords this Court a basis to dismiss the Trustees' claims; nor has the Defendant set forth any authority that would afford this Court the basis to rule at this early stage that the Trustee may not proceed.

**A.    Plaintiffs' Allegations Advised Defendant of the Nature of the Claim and Provide Sufficient Basis for the Court to Conclude A Plausible Claim Exists Which May Be Proven at Trial**

With respect to the claim of malpractice, the Defendant rightly notes that the issue of an attorney/client relationship between the Defendant and the Debtors and the issue of

the duty of an attorney under that relationship is not in dispute in this matter. (DB at 13). That leaves for consideration only whether the services provided by the Defendant meet the appropriate standard of care and whether or not any damages proximately flowed from the Plaintiffs' failure to meet the standard of care.

Legal malpractice is a variation on the tort of negligence. Garcia v. Kozlow, Seaton, Romanini & Brooks, 179 N.J. 343, 357, 845 A.2d 602, 611 (2004) (citing McGrogan v. Till, 167 N.J. 414, 425, 771 A.2d 1187 (2001)); see also Conklin v. Hannoch Weisman, 145 N.J. 395, 416, 678 A.2d 1060, 1070 (1996) (the principals of negligence apply to claims of legal malpractice). The elements of a cause of action for legal malpractice are "the existence of an attorney-client relationship creating a duty of care upon the attorney, the breach of that duty, and proximate causation." Gilles v. Wiley, Malehorn & Sirota, 345 N.J. Super. 119, 125, 783 A.2d 756, 759 (App. Div. 2001) (citing Conklin, supra, 145 N.J. at 416, 678 A.2d at 1070). Under normal principals of negligence, the existence of a duty of care is a question of law that must be decided by the court, while the breach of that duty is one of fact to be decided by the fact-finder. Jenkins v. Anderson, 191 N.J. 285, 305, 922 A.2d 1279, 1290 (2007).

An attorney has a duty to diligently pursue the client's interests, and to do so with "the highest degree of fidelity and good faith." Gilles, supra, 345 N.J. Super. at 125, 783 A.2d at 759. In carrying out this duty, the attorney must exercise "'that degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess and exercise.'" Id. (quoting St. Pius X House of Retreats v. Camden Dioc., 88 N.J. 571, 588, 443 A.2d 1052 (1982)). A determination of reasonableness ordinarily depends on the facts and circumstances of a specific case. Id. at 127; see also Conklin, supra, 145 N.J. at

413, 678 A.2d at 1069 ("[m]alpractice in furnishing legal advice is a function of the specific situation").

The Plaintiffs' claim of malpractice arises out of Defendant's representation of Debtors in the course of dealing with DAI's efforts to terminate the Debtors' franchise relationship. Plaintiffs' claim focuses on the arbitration proceeding which was an early and crucial stage of DAI's efforts to terminate the Debtor's franchise relationship and Defendant's conduct thereafter. It is claimed that the Defendant in representing the Plaintiff failed to take appropriate action and give appropriate counsel in that endeavor.[2] After filing submissions with the arbitrator and scheduling and adjourning a hearing date, the Defendant made a determination not to attend the arbitration proceeding and advised the Debtors not to attend. As a clear result of that conduct, the arbitrator entered an award providing for the termination of the franchises and awarding damages. That determination by the arbitrator became the backbone that allowed DAI to press forward with continued charges of nonpayment of royalties, rents, and related damages, and improper use of the trademarks. It is the submission of the Plaintiffs that if Defendant had applied for injunctive relief prior to the commencement of the arbitration, she could and (from Judge Levy's later ruling) most likely would have obtained a restraining order to prevent the arbitration from going forward and any award being issued.

It would appear from information known to date that Verma delayed in part because she was out of the country just prior to the arbitration proceeding and in part because she insisted on being paid. The submission to Judge Levy resulted in a

---

[2] The issue of whether Verma's conduct meets the standards of proper conduct by an attorney is, of course, an intensely fact based issue depending on specific circumstances. The New Jersey Statute (N.J.S.A. 2A:53a-27) provides a threshold obligation of a plaintiff in malpractice matters to produce an Affidavit of Merit with respect to its claim. Such an affidavit has been obtained and has been filed in this case.

temporary restraint by Judge Levy which prevented the use of the arbitration ruling as evidence but did not, and could not, prevent any other ongoing activities to close down the franchise locations. His receptivity to the argument that the franchise agreements were contracts of adhesion is the best evidence that if he had been approached before the arbitration, he would have granted the injunction preventing the arbitrator from proceeding to a ruling. After the submission to Judge Levy, Verma advised to the Debtors not to do anything until there was a ruling by Judge Levy. All during the time that DAI accumulated charges and penalties, Verma took no action to resolve this matter. Instead, Verma was paid over $100,000 in fees by the Debtors between February 2008 and September 2008. As a result when DAI pressed its case to terminate the franchises before Judge Martini, the Debtors were not in a position to resolve the issue at that stage. DAI still contends that the arbitration ruling itself cannot be collaterally attacked and is the end of any dispute. That matter remains pending in this Court, and if the arbitration award is found to be unassailable, then the consequences of preventing the award from being issued become even clearer.

Verma claimed that obtaining an injunction preventing the arbitration ruling would have accomplished nothing more than obtaining an injunction preventing the use of that ruling in evidence. Thus, she contends that her conduct in handling the termination dispute and particularly the arbitration was not the proximate cause of any damage to Debtors.

This argument ignores the facts of what happened. The arbitration award, although never admitted in evidence, was the basis of DAI's conduct. They refused to accept royalties and they proceeded to cause the franchise to end by preventing Debtors'

use of the trademarks. Verma as counsel for the Debtors took no action until she had to respond to DAI's effort to restrain Debtors' use of the Trademark. By then, it was too late; she failed and the Debtors lost their businesses.

With respect to the issue of proximate cause of damages, Verma contends that the Plaintiffs must prove that Debtors would have prevailed in the arbitration proceeding, by trying the "suit within a suit." Debtors' proofs need not go that far to establish certain damages. The N.J. Supreme Court has held that there are a number of different options available to a plaintiff:

> In Lieberman, we specifically recognized that a legal malpractice case may proceed in any number of ways depending on the issues. Included among those options are a "suit within a suit," any "reasonable modification thereof," and a suit based on "expert testimony." The ruling in Lieberman did not establish a hierarchy among those approaches nor did it suggest that there is a presumption in favor of the "suit within a suit" scheme. We hold today that the proper approach in each case will depend upon the facts, the legal theories, the impediments to one or more modes of trial, and, where two or more approaches are legitimate, to plaintiff's preference.
>
> Garcia, supra, 179 N.J. at 346, 845 A.2d at 604 (citing Lieberman v. Emp'rs Ins. of Wausau, 84 N.J. 325, 343-344 (1980)) (internal citations omitted).

The Debtors had earlier opportunities to dispose of the franchises as going businesses in settlement or in other proceedings, to dispose of physical assets, and to recoup some of their investment. The Debtors suffered damages as a result of Verma's missing the opportunity to prevent entry of the arbitration award, Verma's failure to take action to prevent the movement toward final termination, and Verma's demands for her fees in advance.

Moreover, Verma relies too heavily at this stage of the litigation on the proximate cause issue. The case she cites Laborers Local Union Nos. 472 and 172 v. Interstate Curb & Sidewalk, 90 N.J. 456, 465, 448 A.2d 980, 985 (1982) where the issue was whether the arbitrator had jurisdiction over a non signatory to an arbitration agreement, an issue not at all involved here, does not concern malpractice and does not provide protection from a malpractice claim to an attorney who fails to attend an arbitration. Rather, the New Jersey Supreme Court has adopted the substantial factor test in evaluating malpractice claims. Conklin, supra, the Court stated:

> Generally, our concepts of causation for failure to act are expressed in terms of whether the negligent conduct may be considered a substantial factor contributing to the loss. See Brown v. United States Stove Co., 98 N.J. 155, 171, 484 A.2d 1234 (1984) ("With respect to concurrent proximate causation, a tortfeasor will be held answerable if its 'negligent conduct was a substantial factor in bringing about the injuries,' even where there are 'other intervening causes which were foreseeable or were normal incidents of the risk created.' ") (quoting Rappaport v. Nichols, 31 N.J. 188, 202, 156 A.2d 1 (1959)). Although the law of negligence recognizes that there my be any number of concurrent causes of an injury, "[n]evertheless, these acts need not, of themselves, be capable of producing the injury; it is enough if they are a 'substantial factor' in bringing it about." Scott v. Salem County Memorial Hosp., 116 N.J. Super, 29, 33-34, 280 A.2d 843 (App.Div.1971).
>
> The substantial factor test accounts for the fact that there can be any number of intervening causes between the initial wrongful act and the final injurious consequence and does not require an unsevered connecting link between the negligent conduct and the ultimate harm. The test is thus suited for legal malpractice cases in which inadequate or inaccurate legal advice is alleged to be concurrent cause of harm. 678 A.2d at1072 (footnotes omitted).
>
> Conkin, supra, 145 N.J. at 419, 678 A.2d at 1072.

Another significant element of damages proximately caused by Verma's malpractice are the attorney's fees that were paid to Verma. In her brief, Verma acknowledges that an attorney acting negligently is not entitled to fees. (DB at 27). The return of the total fees paid to Verma (approximately $175,000), or even the return of a major portion of those fees, constitutes damages proximately caused by Verma's negligence.

The New Jersey Supreme Court in Saffer v. Willoughby, 143 N.J. 256, 670 A.2d 527 (1996) held that ordinarily an attorney may not collect attorney's fees for services negligently performed:

> Applying the principals articulated in Lieberman, supra, and following the majority rule in other jurisdictions, the Appellate Division in Strauss v. Fost, 213 N.J. Super. 239, 242, 517 A.2d 143 (1986), held that "a negligent attorney in the appropriate case is not entitled to recover his [or her] legal fees." The court refrained from establishing a hard and fast rule, but concluded that the "general rule should be that the negligent attorney is to be considered precluded from recovering his attorney's fee and, therefore, the total amount of the initial recovery [in the legal malpractice action] would be awardable [to the plaintiff]." Id. at 243, 517 A.2d 143.
>
> We adopt the reasoning and result reached in Strauss. Ordinarily, an attorney may not collect attorney fees for services negligently performed. In addition, a negligent attorney is responsible for the reasonable legal expenses and attorney fees incurred by a former client in prosecuting the legal malpractice action. Those are consequential damages that are proximately related to the malpractice.
>
> Id. at 272-273.

**B.    The Debtors Had Creditors at the Time of the Malpractice**

There were a number of creditors of the Debtors at the time of the malpractice proceeding but the most obvious creditor was DAI, which sought fees and other related

charges regarding the operation of the franchise that were the subject of the very dispute as to which malpractice is claimed. DAI has filed a proof of claim to that effect. (On December 23, 2008 DAI filed a Proof of Claim for $1,983,535.70). Verma's assertion that there were no creditors is groundless and does not support her motion.

Moreover, DAI's Proof of Claim includes only $80,802.04 for royalties and advertising together with interest thereon. An additional $378,580.00 are damages for continued trademark use ( as per the agreement and the award) to which is added treble damages of $1,397,966.46 plus fees. The claim illustrates how DAI was able to capitalize on Verma's failure to act and make use of the accruing trademark damages to get an injunction that in, effect, allowed DAI to terminate the franchises.

C.  **Facts Alleged on Information and Belief Are Sufficient Allegations of Fact to Oppose this Motion to Dismiss**

Verma cites no authority for her assertion that facts alleged on information and belief somehow must be disregarded as speculative. First, a Trustee in bankruptcy will have little personal knowledge and a number of facts will have to be alleged on information and belief. Second, the test here is not, as in summary judgment, as to whether the allegations of fact are based on personal knowledge. We are at a different stage of the litigation and the focus of the Court's inquiry is on what facts are alleged and not whether they are alleged on information and belief.

## POINT IV

**Defendant's Motion to Dismiss the Fraudulent Conveyance Claims in Counts II and IV and Should Be Denied and the Plaintiffs Should Be Granted Leave to Withdraw Count III Without Prejudice to its Reassertion**

Defendant seeks to dismiss Plaintiffs' claims that Debtors' payments to her as an attorney performing malpractice constitute fraudulent conveyances on the grounds that

(1) a retainer agreement alone is evidence of a reasonable equivalent value and, (2) there is no showing of fraud or fraudulent intent.

The issue of reasonably equivalent value in the payment of attorney's fees will in large part be determined by the Court's findings under the malpractice claims. If the attorney committed malpractice, she is not entitled to fees (see DB at 27 and Point II *infra*). In addition to the fees constituting damages for the malpractice claim, the same fees paid for the work which actually damaged the Debtors, necessarily lack value and will constitute a fraudulent conveyance. There is no authority specifically addressing the issue of reasonably equivalent value in these circumstances but if Defendant does not prevail on the malpractice claim and is thus not entitled to be paid, there is no basis to assert that she provided reasonably equivalent value merely because she had a retainer agreement.

With respect to the claim of heightened proof of fraud, while Verma is correct in stating that there are certain heightened requirements involved with pleading fraud, these heightened requirements are tempered, not only by a flexible approach to the Federal Rules of Civil Procedure, but also by the general understanding that there is a greater liberality for pleading fraud in bankruptcy cases. See In re Global Link Telecom Corp., 327 B.R. 711, 717 (Bankr. D. Del 2005) (quoting Hassett v. Zimmerman (In re O.P.M. Leasing Servs., Inc.), 32 B.R. 199, 203 (Bankr. S.D.N.Y. 1983), and citing Schaffenberger v. Phila. Health Care Trust (In re Allegheny Health, Educ., and Research Found.), 253 B.R. 157, 162 n. 2 (Bankr. W.D. Pa. 2000)).

Also, in those circumstances "[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control", courts have

recognized a relaxed pleading standard for fraud claims. See <u>Northwestern Human Servs., Inc. v. Panaccio</u>, 2004 WL 2166293, at *8 (E.D. Pa. No. Civ. A. 03-157, September 24, 2004).

Courts have further recognized that this more relaxed approach to the application of Fed.R.Civ.P. 9 is even more appropriate in those cases where the fraud claim is brought by a bankruptcy trustee. <u>In re Reading Broadcasting, Inc</u>., 390 B.R. 532, 550 (Bankr. E.D. Pa. 2008). Generally, a trustee has no knowledge of the prepetition acts giving rise to the alleged fraud. Flexibility in the heightened pleading standard of Fed.R.Civ.P. 9(b) is "'required because it is often the Trustee, a third party outsider to the fraudulent transaction[s], that must plead fraud on second hand knowledge for the benefit of the estate and all of its creditors.'" <u>In re Global Link Telecom, Corp.</u>, 327 B.R. 711 (Bankr. D.Del. 2005) (quoting <u>Hasset v. Zimmerman</u> (In re O.P.M. Leasing Servs., Inc.), 32 B.R. 199, 203 (Bankr. S.D.N.Y. 1983)). In the matter *sub judice*, the Trustees are the Plaintiffs, and thus the more lax pleading requirement for fraud is applicable to certain counts of Plaintiffs' Complaint.

Moreover, a claim for a constructive fraudulent transfer (as is asserted in Counts II and IV) is not required to satisfy the heightened pleading standard of rule 9(b), a fact which Verma fails to acknowledge in her Brief. See <u>Sharp Int'l Corp. v. State St. Bank and Trust. Co. (In re Sharp Int'l Corp.)</u>, 281 B.R. 506, 518 (Bankr. E.D.N.Y. 2002), aff'd, 302 B.R. 760 (E.D.N.Y. 2003), aff'd, 403 F.3d 43 (2d Cir. 2005). Because scienter is not an element, as the claim is based upon the financial condition of the transferor at the time of the transfer and the sufficiency of the consideration provided by the transferee there is no need for a plaintiff to adhere to the more stringent pleading standard. In the matter

*sub judice*, the Plaintiffs have alleged, constructive fraud, and therefore in order to state a claim as to these counts, must merely satisfy Rule (8)(a) and "'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (quoting Bell Atl., 127 S.Ct. at 1955). Thus, to the extent Plaintiffs have alleged constructive fraud in Counts II and IV the Plaintiffs' Complaint is governed by the liberal notice pleadings standards embodied in Fed. R. Civ. P. 8(a).

Count III of the Amended Complaint alleges actual fraud in general terms. In filing the Complaint the Trustee was placed between the upcoming deadline for such claims and the continuing failure by Verma to provide the necessary detailed information even in the face of a court order. A number of the badges of fraud may be implicated: (1) the Debtor had been sued before the transfer was made; (2) the transfers were not disclosed on the schedules; (3) the value of the consideration received was inadequate; and (4) the Debtor was insolvent. In addition, because of the unusual relationship between Patwari and Verma, facts may be developed to show that Verma was even an insider. Patwari's husband came to work for Vema. Some of the payments to Verma were made in cash and have not yet been accounted for. In the early stage of the relationship Verma seems to have had a strong influence on Patwari.

The Trustees are not yet in a position to include such more detailed allegations in the pleading, in large part because of Defendants' failure to provide requested information. Accordingly for Count III, which concerns actual fraudulent intent, the Trustees ask leave of this Court to amend the Complaint to withdraw that claim without prejudice to its renewal if after discovery of all of the facts, its reassertion is warranted.

**POINT V**

**Defendant's Motion to Dismiss the Claim in Count IV for Recovery of Estate Property Under § 550 Should Be Denied**

While Defendant moves to dismiss the Plaintiffs' claims under §550 in Point V, her brief does not make a substantial argument on this issue. The purpose of the claim is to recover transfers found voidable under other counts. It should not be dismissed as its application will be determined by the resolution of the other claims of Plaintiff and will allow this Court to afford complete relief in the proceeding. For recovery of property pursuant to section 550 of the Bankruptcy Code, a court must first make a determination whether the transfer was a preference under §547, a fraudulent transfer under §548 or fraudulent under applicable state law and, therefore, avoidable under § 544, before that transfer can be recovered pursuant to § 550(a). Section 550(a) is a secondary cause of action after a trustee has prevailed pursuant to the avoidance sections of the Bankruptcy Code. Santee v. N.W. Nat'l Bank (In re Mako, Inc.), 127 B.R. 471, 473 (Bankr. E.D. Okla. 1991). "Section 550(a) stands as a recovery statute only and not as a primary avoidance basis for an action, as it will only survive when coupled with the transfer avoidance sections of the Code." Id. Section 550 allows the trustee to recover the entire value of the property transferred, even if it exceeds the debt to the creditor that provided the basis for the action. Kleven v. Stewart (In re Myers), 320 B.R. 667, 670 (Bankr. N.D. Ind. 2005). Even though an action to avoid a transfer may be, and often is, brought in conjunction with an action to recover the property transferred or its value, a court must evaluate the two bases of relief separately. SKK Liquidation Trust v. Green & Green, LPA (In re Spinnaker Indus., Inc.), 328 B.R. 755, 763-764 (Bankr. S.D. Ohio 2005); Barber v. McCord Auto Supply, Inc. (In re Pearson Indus., Inc.), 178 B.R. 753, 759

(Bankr. C.D. Ill. 1995). "Once the whole transfer has been pulled into the estate, the money is distributed according to the priorities established by the Code and the debtor's own commitments." In re FBN Food Servs., Inc., 82 F.3d 1387, 1396 (7th Cir. 1996). To the extent the alleged fraudulent transfers are avoided by the Plaintiffs, the Plaintiffs are entitled to recover, for the benefit of the estate of the Debtors, the value of such avoidable transfers.

## POINT VI

### Plaintiffs Should Be Permitted to File an Amended Complaint to Correct Any Deficiency in Allegations Found By the Court

One important consideration on the timing of this motion is that for a long time the Plaintiffs have been seeking the Defendant's files for purposes of being able to ascertain, formulate and assert appropriate causes of action. One of the Counts in the complaint, which Defendant does not seek to dismiss, seeks compliance and damages for the Defendant's failure to turn over those files and even to comply with a Court Order requiring that turnover. This was not a discovery request. This was the Trustee, standing in the shoes of the Debtors as Verma's client, requesting the debtors' attorney to turn over the files to the client. After much resistance by Verma, an order was entered requiring that turnover. Verma's delivery of cartons of documents relating to various proceedings was only a smokescreen to conceal her failure to deliver all of the core information regarding the arbitration. Specifically, we do not have all of Verma's billing records. We do not have copies of all the bills. We do not believe we have all of her legal research and memoranda regarding the arbitration issue and subsequent activity and we do not appear to have all of the various e-mails that were exchanged between Verma

and the Debtors during this period of time. From what we have seen to date we expect those e-mails will be important in this case.

Accordingly, we ask the Court to take into consideration the Defendant's custody of critical information and her failure to produce it when weighting the totality of the allegations with respect to these claims that the Trustees have been able to make.

As it is axiomatic that leave to amend should be freely granted when justice so requires, (F.R.C.P. 15(a)(2)) and particularly so where Defendant has not even answered and no discovery has been conducted, if the Court finds any insufficiency in the factual allegations of the pleadings, the Plaintiffs request the opportunity to file an Amended Complaint.


Dated: January 3, 2011                       MCELROY, DEUTSCH, MULVANEY &
                                                  CARPENTER, LLP


                                    BY:    */s/ Michael S. Waters*
                                           MICHAEL S. WATERS
                                           *Attorneys for Eric R. Perkins, Esq.*
                                           *Chapter 7 Trustee*

1538076                                    19